IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Tangie Griffin, ) | C/A No. 0:12-2745-MGL-PJG |
|          Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner ) of Social Security,[1] ) | |
|          Defendant. ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Tangie Griffin ("Griffin"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

### ADMINISTRATIVE PROCEEDINGS

In April 2009, Griffin applied for DIB, alleging disability beginning June 19, 2008. Griffin's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on February 10, 2011, at which Griffin, who was represented by Paul T. McChesney, Esquire, appeared and testified. After hearing testimony

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.

Page 1 of 13



from a vocational expert, the ALJ issued a decision on March 23, 2011 finding that Griffin was not disabled. (Tr. 17-31.)

Griffin was twenty-eight years old on her disability onset date. She has a high school education and past relevant work experience as a cashier and a satellite receiver tester. (Tr. 130, 136.) In her application, Griffin alleged disability since June 19, 2008 due to lower back injury/pain, and asthma. (Tr. 129.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since June 19, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: disorders of the back (20 CFR 404.1520(c)).

   \* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525 and 404.1526).

   \* \* \*

5. . . . [T]he claimant has the residual functional capacity to perform reduced light work as defined in 20 CFR 404.1567(b). Specifically, she can lift/carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand and walk for six hours of an eight hour workday. She can occasionally climb, including ropes, ladders and scaffolds; and occasionally balance; stoop; kneel; crawl and crouch. The claimant should avoid concentrated exposure to fumes.

   \* \* \*

6. The vocational expert, Kathleen Robbins, described the claimant's past relevant work as a cashier in a convenience store, described by the vocational expert as generally light and unskilled, but the claimant performed it at a light to medium level because she did stocking, because she counted her drawer, performed it at a semi-skilled level; bench inspector (examining satellite receivers), described as light with an SVP of 4, but as performed was light and unskilled; finish inspector (examining plastic shutters), light and



>   unskilled with an SVP of 2; cashier in grocery store, described as light with an SVP of 3 and a nurse's aide (home health aide) medium to heavy and semi-skilled with an SVP of 3.
>
>   \* \* \*
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from June 19, 2008, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 19-30.) The Appeals Council which denied Griffin's request for review on July 23, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)   whether the claimant is engaged in substantial gainful activity;

(2)   whether the claimant has a "severe" impairment;

(3)   whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)   whether the claimant can perform her past relevant work; and

(5)   whether the claimant's impairments prevent her from doing any other kind of work.

---

20 C.F.R. § 404.1520(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

**ISSUE**

Griffin raises the following issue for this judicial review:

Issue I   Treating physicians' opinions are entitled to great weight in the absence of compelling contrary evidence and may be entitled to controlling weight.  The ALJ improperly gave little weight to the medical opinions of Dr. McCorkle and Dr. Mironer, whose opinions support a finding of disability.  Where the ALJ improperly disregards or ignores the opinions of treating physicians, can his decision be supported by substantial evidence?

(Pl.'s Br., ECF No. 13.)

**DISCUSSION**

Griffin essentially argues that the ALJ improperly discounted opinions from two treating physicians.  Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. § 404.1527(c)(2).  However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).  Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician



is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

**A.     Dr. Calvert K. McCorkle**

Dr. Calvert K. McCorkle, one of Griffin's treating physicians, completed a questionnaire on December 16, 2009 in which he affirmed that Griffin would most probably have to miss more than three days of work per month and would most probably have to elevate her legs for more than an hour during the workday. (Tr. 304.) Additionally, Dr. McCorkle provided a statement on May 26, 2010 in which he opined that Griffin's condition was such that she would be limited to no more than sedentary work, that she would most probably need to change positions frequently, and that her back pain would cause frequent interruptions to her concentration. (Tr. 210.) In assessing little weight to Dr. McCorkle's opinions, the ALJ found as follows:

> Dr. McCorkle last treated the claimant in November 2008. Thus, his period of treatment does not span the entire period the claimant alleges she has been disabled. At that time he indicated her straight leg was negative. He also found her strength and reflexes were within normal limits. While Dr. McCorkle treated the claimant, there is evidence in his own medical records that the claimant's condition was improving, and that she was exercising, walking and doing physical therapy. He also described one of her presentations as a good examination. He treated her with medication, save a recommendation of an S1 injection in November 2008. While he suggested that she change jobs to avoid bending or lifting, he never made a finding or even suggested that she would need to elevate her legs during the day. Medical evidence after his course of treatment likewise does not support his opinions. An



> MRI in July 2009 showed postsurgical changes at L5-S1, a mild annular bulge without significant central or foraminal narrowing, and at L4-5 very small collection within ligament UM flavum. The remainder of the exam was normal (Exhibit 3F, p.1). An EMG study was mainly within normal limits with the exception of electrodiagnostic evidence suggestive of a left chronic/old L5 and S1 radiculopathy (Id., p.11). Dr. Halla conducted a complete examination of the claimant. He found she had normal sensation and motor strength in her extremities (Exhibit 18F, p.2). Her gait was normal, and her muscle strength was 5/5. He notes the claimant "smiles a lot." He described her examination as "basically a normal examination . . ." (Id., p.3). There is evidence the claimant attends church every Sunday. She lives with three children ages 13, 11 and 10 and presumably has to provide some care for them, a presumption partly supported by the record. There is evidence that since the alleged onset date the claimant has taken her children to school; prepared food for them; prepared meals; done laundry, despite her testimony; performed light housework; has driven and ridden in a car; shopped in stores for groceries, household products and clothing; gone out to eat; used a computer to check e-mails and shop; rode in a car to New York; driven a car and was involved in an accident; and has gone to a tanning bed every day. There is evidence that she has increased her walking and exercising after the alleged onset date. Thus, there is little medical or factual evidence of record supporting Dr. McCorkle's opinions.

(Tr. 27.)

Griffin first argues that Dr. McCorkle was familiar with the longitudinal picture of Griffin's back impairment and that the Social Security regulations do not require a specific number of treatment visits or length of treatment in order to credit the opinion of a treating source. See 20 C.F.R. § 404.1527(c)(2)(i). However, the Commissioner argues and the ALJ noted that while Dr. McCorkle performed back surgery on Griffin in July 2004, he did not treat her again until July 2008, at which time he recommended conservative treatment. (Tr. 24, 339, 343.) Additionally, viewing the quote above shows that the length of treatment was but one of many factors that the ALJ considered and discussed when assessing Dr. McCorkle's opinions little weight. See 20 C.F.R. § 404.1527(c)(2)(i), (ii) (permitting an ALJ to consider the length, nature, and extent of the treatment relationship in evaluating a medical opinion).



Griffin also argues that in determining that Dr. McCorkle's opinions were entitled to little weight, the ALJ "cherry-picked" the record and improperly focused on evidence of Griffin's improvement. The court disagrees. As summarized by the ALJ, some of Dr. McCorkle's notes observed that Griffin had discomfort and pain to palpation, bending, and straight leg raising; and that Dr. McCorkle recommended an S1 injection and treated Griffin with medication. (Tr. 24, 27.) Additionally, the ALJ noted evidence of positive straight leg raises, noted evidence that Griffin had good days and bad days, and discussed many of Griffin's subjective complaints with regard to pain. (Tr. 24-26.) Indeed, as pointed out by the Commissioner, the ALJ found "sufficient evidence [that Griffin] has experienced back pain since the alleged onset date; however, the objective medical evidence is unpersuasive in providing support for [Griffin]'s position that it is disabling." (Tr. 26.) In light of this, the court cannot agree that the ALJ selectively considered the record such that his opinion is unsupported by substantial evidence. See 20 C.F.R. § 404.1527(c); Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted).

Griffin also alleges that the ALJ impermissibly interpreted medical evidence in order to discount the opinions of Dr. McCorkle. However, it is clear from the ALJ's opinion that the ALJ in making his residual functional capacity determination relied on medical providers' summaries and interpretations of Griffin's MRI and EMG tests, as well as the opinions of consultative examiners who opined Griffin was limited to medium work. (See Tr. 27-28.) Where the record contains conflicting medial evidence, it is the purview of the ALJ to consider and weigh the evidence, and



resolve the conflict. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

Griffin also argues the ALJ's finding that Griffin's activities of daily living disprove Dr. McCorkle's opinions is unreasonable. As stated above, the ALJ found that Griffin, *inter alia*, attended church every Sunday; took care of her three children, including preparing food for them and taking them to school; did laundry; performed light housework; rode in a car to New York; shopped for groceries; used a computer; and went to a tanning bed every day. (Tr. 27.) The ALJ noted many inconsistencies in Griffin's testimony with regard to her activities of daily living, and referenced several medical records and a function report in finding that Griffin's "inconsistent statements cast a shadow of incredulity over her testimony regarding the facts in this case, and her veracity as to the severity of her impairments." (Tr. 22-23.) Although Griffin argues that the ALJ's finding is unreasonable and that "none of the unquantified activities disproves . . . Dr. McCorkle's opinions of limitations supporting disability resulting from her pain," Griffin cannot show that the ALJ's decision was error. It is clear from the ALJ's opinion that he considered Griffin's activities of daily living as but one aspect in weighing Dr. McCorkle's opinion. While Griffin may disagree with the ALJ's ultimate determination, she has failed to demonstrate that the ALJ failed to properly apply the relevant factors or that the ALJ's decision with regard to Dr. McCorkle's opinions is unsupported by substantial evidence. See 20 C.F.R. § 404.1527(c); see, e.g., Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints).

*PJG*

With regard to Griffin's argument that Dr. McCorkle's and Dr. Eugene Mironer's opinions are entitled to additional weight as they are consistent with each other, the court observes that in weighing these opinions the ALJ noted numerous inconsistencies between the opinions and the evidence of record, which included opinions from other medical sources.  See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); 20 C.F.R. 404.1527(c)(4).

For all of these reasons, the court finds that Griffin has not shown that the Commissioner's decision with regard to Dr. McCorkle was unsupported by substantial evidence or reached through application of an incorrect legal standard.

**B.     Dr. Eugene Mironer**

Griffin also argues that the ALJ's assessment of little weight with regard to the opinion of Dr. Eugene Mironer, who treated Griffin for pain, is not supported by substantial evidence.  The ALJ found as follows:

> I assess little weight to Dr. Mironer's opinion in 13F wherein he opines the claimant would experience interruptions to her concentration sufficient to frequently interrupt tasks in either a standing or seated position.  He also opines she would not be able to stand or walk in combination more than 2 hours out of an 8 hour workday; that she would need to change positions between sitting and standing every 30 minutes and would miss more than 3 days of work per month due to pain.  He cites her MRI and EMG testing as support for his opinion.  I find that the laboratory tests performed on the claimant do not support his position.  In July 2008 an MRI showed only mild right neural foraminal stenosis and no recurrent disc herniation.  An MRI in July 2009 only showed a mild annular bulge without significant central or foraminal narrowing.  While Dr. Mironer determined that the claimant[] had positive straight leg raising in July 2009, a subsequent EMG was normal with the exception of chronic/old L5-S1 radiculopathy.  In fact, her straight leg raise was again normal in



> November 2009.  The tests do not even indicate any moderate or severe findings.
> Thus, it is implausible that such findings could even possibly support such limitations
> as opined by Dr. Mironer.

(Tr. 28.)  Additionally, the ALJ found that Griffin's activities of daily living provided "little to no support for Dr. Mironer's opinion that the claimant would miss more than three days from work per month."  (Id.)  In assessing little weight to Dr. Mironer's opinion, the ALJ found that there was "no concomitant medical evidence that the claimant's back condition is as severe to the extent suggested by Dr. Mironer" and that Dr. Mironer's "extremely restrictive limitations" were not supported by his own medical records.  (Id.)

As stated above, the ALJ has the discretion to accord less than controlling weight to a treating physician's opinion " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence.' " Mastro, 270 F.3d at 178 (quoting Craig, 76 F.3d at 590).  Griffin argues that the ALJ impermissibly interpreted the medical evidence (specifically the MRI and EMG) in order to discount Dr. Mironer's opinion.  For the reasons stated above, the court disagrees.  Likewise, Griffin's argument that her activities of daily living do not support the rejection of Dr. Mironer's opinion and her argument that Dr. Mironer's opinion is entitled to more weight as it is consistent with Dr. McCorkle's opinion similarly fails for the reasons stated above.  Lastly, Griffin argues that the ALJ "cherry-picked" the record and ignored Dr. Mironer's abnormal findings such as decreased range of motion, decreased sensation to light touch, and abnormal EMG results.  (Pl.'s Br., ECF No. 13 at 33.)  As pointed out by the Commissioner, the ALJ's opinion discusses extensively Griffin's abnormal EMG results and the ALJ even reduced his RFC finding from the state agency's recommendation of medium work to light work based in part on this evidence.  (See Tr. 25-26.)  The ALJ also noted that the majority of Dr. Mironer's findings on examination were



normal and that the MRIs and EMG that were cited in Dr. Mironer's opinion contained only mild findings. (Tr. 28.) Accordingly, the court cannot agree that the ALJ selectively considered the record such that his opinion is unsupported by substantial evidence.

To the extent that Griffin argues that the ALJ erred in relying on Dr. Mironer's statement that Griffin "talked about pain in an excessive manner" (Tr. 29)—a statement that Dr. Mironer subsequently amended—the court finds any such error to be harmless. Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (finding it to be harmless error where the ALJ identified some reasons that were incorrect but also relied on other, legally valid reasons).

## RECOMMENDATION

For the foregoing reasons, the court finds that Griffin has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 3, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).